# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

*Florida Decides Healthcare, Inc., et al.,*
Plaintiffs-Appellees,

v.

*Florida Secretary of State, et al.,*
Defendants-Appellants.

U.S. District Court for the Northern District of Florida, No. 4:25-cv-211-MW-MAF
(Walker, J.)

## DEFENDANTS-APPELLANTS FLORIDA SECRETARY OF STATE AND FLORIDA ATTORNEY GENERAL'S INITIAL BRIEF

William H. Stafford, III
Sara E. Spears
OFFICE OF THE ATTORNEY GENERAL
PL-01, The Capitol
Tallahassee, Florida 32399
(850) 414-3785

Mohammad O. Jazil
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, Florida 32301
(850) 274-1690

*Counsel for the Florida Attorney General*

*Counsel for the Florida Secretary of State*

*Florida Decides Healthcare, Inc., et al. v. Florida Secretary of State, et al.*
No. 25-12370

# CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, Defendants-Appellants Florida Secretary of State and Florida Attorney General certify that the following have an interest in the outcome of this case. Note that "Defendant(s)," as opposed to "Defendants-Appellants," refers to defendants in the case, other than the Florida Secretary of State and Florida Attorney General.

1. Acosta Gaspar de Alba, Ana-Christina, *Declarant for Plaintiffs*

2. Adkins, Janet, *Defendant*

3. Aertker, Susan, *Declarant for Plaintiffs*

4. Alachua County Attorney's Office, *Attorneys for Defendant*

5. Alicea, Delmarie, *Attorney for Intervenor Plaintiffs-Appellees*

6. Arnold & Porter LLP, *Attorneys for Intervenor Plaintiffs-Appellees*

7. Arrington, Mary Jane, *Defendant*

8. Asparrin, Michael, *Attorney for Intervenor Plaintiffs-Appellees*

9. Bailey, Andrew, Attorney General of Missouri, *Amicus Curiae*

10. Baird, Maureen, *Defendant*

11. Bakkedahl, Thomas, *Defendant*

12. Bardos, Andy, *Attorney for Defendants*

13. Bartlett, Bruce, *Defendant*

14. Barton, Kim, *Defendant*

15.     Basford, Larry, *Defendant*

16.     Beato, Michael, *Attorney for Defendant-Appellant*

17.     Bell, Melony, *Defendant*

18.     Bender, Robert, *Defendant*

19.     Bennette, Matletha, *Attorney for Plaintiff-Appellee*

20.     Bentley & Bruning, *Attorneys for Defendants*

21.     Bentley, Morgan, *Attorney for Defendants*

22.     Blazier, Melissa, *Defendant*

23.     Bledsoe, William, *Attorney for Defendant*

24.     Bobanic, Tim, *Defendant*

25.     Boettcher, Ellen, *Attorney for Intervenor Plaintiffs-Appellees*

26.     Bottcher, Susan, *Declarant for Plaintiffs*

27.     Bowden Madden, Ginger, *Defendant*

28.     Bridges, Jonathan, *Declarant for Defendants-Appellants*

29.     Brodsky, Ed, *Defendant*

30.     Broward County Attorney's Office, *Attorneys for Defendant*

31.     Brown, Derek, Attorney General of Utah, *Amicus Curiae*

32.     Bryant, Matt, *Attorney for Intervenor Plaintiffs-Appellees*

33.     Burhans Jr., Glenn, *Attorney for Intervenor Plaintiffs-Appellees*

34.     Byrd, Cord, Florida Secretary of State, *Defendant-Appellant*

35.     Campaign Legal Center, *Attorneys for Intervenor Plaintiffs-Appellees*

36. Campbell, Jack, *Defendant*

37. Carr, Chris, Attorney General of Georgia, *Amicus Curiae*

38. Castor Dentel, Karen, *Defendant*

39. Chaires, Darbi, *Defendant*

40. Chambless, Chris, *Defendant*

41. Chandler, Debra, *Intervenor Plaintiff-Appellee*

42. Chason, Sharon, *Defendant*

43. Chaudhuri, Pooja, *Attorney for Intervenor Plaintiffs-Appellees*

44. Clark, Christopher, *Attorney for Intervenor Plaintiffs-Appellees*

45. Conyers, Grant, *Defendant*

46. Copper, Alexandra, *Attorney for Intervenor Plaintiffs-Appellees*

47. Corley, Brian, *Defendant*

48. Cox, Alexcia, *Defendant*

49. Cox, Meghan, *Declarant for Plaintiffs*

50. Darus, Lisa, *Defendant*

51. Davis, Ashley, *Attorney for Defendant-Appellant*

52. Davis, Caandra, *Declarant for Plaintiffs*

53. Davis, Vicki, *Defendant*

54. DeBise, Jarvis, *Declarant for Plaintiffs*

55. Democracy Defenders Fund, *Attorneys for Intervenor Plaintiffs-Appellees*

56. Dēmos, *Attorneys for Intervenor Plaintiffs-Appellees*

57.   Dixit, Kunal, *Attorney for Intervenor Plaintiffs-Appellees*

58.   Dolan, Krista, *Attorney for Plaintiff-Appellee*

59.   Doyle, Tommy, *Defendant*

60.   Driggers, Heath, *Defendant*

61.   Dunaway, Carol, *Defendant*

62.   Durrett, John, *Defendant*

63.   Earley, Mark, *Defendant*

64.   Eisen, Norman, *Attorney for Intervenor Plaintiffs-Appellees*

65.   Elias Law Group, *Attorneys for Plaintiffs-Appellees*

66.   Elliot, Monica, *Declarant for Plaintiffs*

67.   Ellis, Elizabeth, *Attorney for Intervenor Plaintiffs-Appellees*

68.   Emerson, Mitchell, *Plaintiff-Appellee*

69.   Erdelyi, Susan, *Attorney for Defendants*

70.   Escambia County Attorney's Office, *Attorneys for Defendant*

71.   Farnham, Aletris, *Defendant*

72.   Farrington, Scott, *Defendant*

73.   Ferguson, Robert, *Attorney for Intervenor Plaintiffs-Appellees*

74.   Fernandez Gold, Sofia, *Attorney for Intervenor Plaintiffs-Appellees*

75.   Fernandez Rundle, Katherine, *Defendant*

76.   Figg, Mary, *Declarant for Plaintiffs*

77.   Fitzpatrick, Martin, *U.S. Magistrate Judge*

78.   Florida Attorney General's Office, *Attorneys for Defendant-Appellant*

79.   Florida Decides Healthcare, Inc, *Plaintiff-Appellee*

80.   Florida Department of State, *Attorneys for Defendant-Appellant*

81.   FloridaRightToCleanWater.Org, *Intervenor Plaintiff-Appellee*

82.   Fox, Amira, *Defendant*

83.   Freedman, John, *Attorney for Intervenor Plaintiffs-Appellees*

84.   Galindo, Miranda, *Attorney for Intervenor Plaintiffs-Appellees*

85.   Gambhir, Harleen Kaur, *Attorney for Plaintiffs-Appellees*

86.   Garcia, Alina, *Defendant*

87.   Gardner Bist Bowden, *Attorneys for Defendants*

88.   Gelber Schachter & Greenberg PA, *Attorneys for Intervenor Plaintiffs-Appellees*

89.   Gibson, Benjamin, *Attorney for Intervenor Defendant*

90.   Gladson, Bill, *Defendant*

91.   Grannum, Shane, *Attorney for Intervenor Plaintiffs-Appellees*

92.   Graves, Carson, *Declarant for Plaintiffs*

93.   GrayRobinson PA, *Attorneys for Defendants*

94.   Greenberg, Gerald, *Attorney for Intervenor Plaintiffs-Appellees*

95.   Guin, Ava, *Declarant for Plaintiffs*

96.   Haller, Cynthia, *Declarant for Plaintiffs*

97.   Hankins, Christi Jo, *Attorney for Defendant*

98.   Hanson, Corbin, *Attorney for Defendant*

99.   Hardy, Maryssa, *Attorney for Defendant-Appellant*

100.  Hart, Travis, *Defendant*

101.  Hass, Brian, *Defendant*

102.  Hays, Alan, *Defendant*

103.  Healy, Karen, *Defendant*

104.  Heard, Bradley, *Attorney for Plaintiffs-Appellees*

105.  Henderson Fanklin Starnes, *Attorneys for Defendants*

106.  Hernando County Attorney's Office, *Attorneys for Defendant*

107.  Herron, Mark, *Attorney for Defendant*

108.  Herron, Michael, *Declarant for Plaintiffs*

109.  Hilgers, Michael, Attorney General of Nebraska, *Amicus Curiae*

110.  Hillsborough County Attorney's Office, *Attorneys for Defendant*

111.  Hodie, Sherri, *Defendant*

112.  Hoffmeyer, Lisa, *Declarant for Plaintiffs*

113.  Hohnholt, Matthew, *Declarant for Plaintiffs*

114.  Holland, Jerry, *Defendant*

115.  Holtzman Vogel Baran Torchinsky & Josefiak, *Attorneys for Defendant-Appellant*

116.  Hurst, Alan, *Attorney for Amicus Curiae*

117.  Hutto, Laura, *Defendant*

118.  Jacobs Scholz & Wyler LLC, *Attorneys for Defendants*

119.  Jacobs, Arthur ("Buddy"), *Attorney for Defendants*

120.  Janulis, Adam, *Declarant for Plaintiffs*

121.  Jazil, Mohammad, *Attorney for Defendant-Appellant*

122.  Jonas, Sarah, *Attorney for Defendant*

123.  Jones, Tammy, *Defendant*

124.  Jouben, Jon, *Attorney for Defendants*

125.  Kahn, Jared, *Attorney for Defendant*

126.  Karpatkin, Jeremy, *Attorney for Intervenor Plaintiffs-Appellees*

127.  Katzman, Adam, *Attorney for Defendant*

128.  Keen, William, *Defendant*

129.  Khoshkhoo, Neda, *Attorney for Intervenor Plaintiffs-Appellees*

130.  King, Blackwell, Zehnder & Wermuth P.A., *Attorneys for Plaintiffs-Appellees*

131.  Kinsey, Jennifer, *Defendant*

132.  Klein, Spencer, *Attorney for Intervenor Plaintiffs-Appellees*

133.  Knudsen, Austin, Attorney General of Montana, *Amicus Curiae*

134.  Kobach, Kris, Attorney General of Kansas, *Amicus Curiae*

135.  Kramer, Brian, *Defendant*

136.  Labrador, Raúl R., Attorney General of Idaho, *Amicus Curiae*

137.  Lang, Danielle, *Attorney for Intervenor Plaintiffs-Appellees*

138. Larizza, R.J., *Defendant*

139. Latimer, Craig, *Defendant*

140. Latino Justice PRLDEF, *Attorneys for Intervenor Plaintiffs-Appellees*

141. Lavancher, Denise, *Defendant*

142. Lavia III, John, *Attorney for Defendant*

143. League of United Latin American Citizens¸ *Intervenor Plaintiff-Appellee*

144. League of Women Voters of Florida Education Fund, *Intervenor Plaintiff-Appellee*

145. League of Women Voters of Florida, *Intervenor Plaintiff-Appellee*

146. Leeper, Simone, *Attorney for Intervenor Plaintiffs-Appellees*

147. Leinhart, Kaitlyn, *Defendant*

148. Lewis, Lisa, *Defendant*

149. Link, Wendy, *Defendant*

150. Lopez Garcia, Yivian, *Intervenor Plaintiff-Appellee*

151. Lopez, Susan, *Defendant*

152. Lux, Paul, , *Defendant*

153. Marcus, Julie, *Defendant*

154. Mari, Frank, *Attorney for Defendant*

155. Marks Gray P.A., *Attorneys for Defendants*

156. Marshall, Steve, Attorney General of Alabama, *Amicus Curiae*

157. Martin, Melissa, *Declarant for Plaintiffs*

158.    Martin, Melissa, *Intervenor Plaintiff-Appellee*

159.    Mastoris, George, *Attorney for Intervenor Plaintiffs-Appellees*

160.    May, David, *Defendant*

161.    Mays, Tianna, *Attorney for Intervenor Plaintiffs-Appellees*

162.    McCrory, Hill, *Declarant for Plaintiffs*

163.    McCuskey, John, Attorney General of West Virginia, *Amicus Curiae*

164.    McNalis, Genevieve, *Attorney for Defendant-Appellant*

165.    McVay, Bradley, *Attorney for Defendant-Appellant*

166.    Meros, Nicholas, *Attorney for Intervenor Defendant*

167.    Messer Caparello & Self PA, *Attorneys for Defendant*

168.    Messer, Ryan, *Defendant*

169.    Miami-Dade Supervisor of Elections Office, *Attorneys for Defendant*

170.    Militello, Pam, *Declarant for Plaintiffs*

171.    Milligan, Michelle, *Defendant*

172.    Milton, Christopher, *Defendant*

173.    Mobley, Valerie, *Declarant for Plaintiffs*

174.    Montenegro, Steve, Speaker of the Arizona House of Representatives, *Amicus Curiae*

175.    Morales, Carlos, *Declarant for Plaintiffs*

176.    Morgan, Joseph, *Defendant*

177.    Murphy, Hannah, *Attorney for Intervenor Plaintiffs-Appellees*

178.  Murrill, Liz, Attorney General of Louisiana, *Amicus Curiae*

179.  Nabors Giblin & Nickerson PA, *Attorneys for Defendant*

180.  Neal, Melissa, *Attorney for Intervenor Plaintiffs-Appellees*

181.  Nelson, Melissa, *Defendant*

182.  Nguyen, Phi, *Attorney for Intervenor Plaintiffs-Appellees*

183.  Nordby, Daniel, *Attorney for Intervenor Defendant*

184.  Oakes, Vicky, *Defendant*

185.  Office of the General Counsel, City of Jacksonville, *Attorneys for Defendant*

186.  Office of the Idaho Attorney General, *Attorneys for Amicus Curiae*

187.  Olivo III, Geraldo, *Attorney for Defendants*

188.  Olson Sharkey, Emma, *Attorney for Plaintiffs-Appellees*

189.  Olson, Victoria, *Declarant for Plaintiffs*

190.  Orjuela Prieto, Humberto, *Intervenor Plaintiff-Appellee*

191.  Osborne, Deborah, *Defendant*

192.  Overturf, Charles, *Defendant*

193.  Paxton, Ken, Attorney General of Texas, *Amicus Curiae*

194.  Pennock, Amy, *Defendant*

195.  Pereira Bonilla, Ramón, *Declarant for Plaintiffs*

196.  Perez, Thomas, *Declarant for Plaintiffs*

197.  Peterson, Warren, President of the Arizona Senate, *Amicus Curiae*

198. Pettis, Deidra, *Defendant*

199. Pierce, Rhonda, *Defendant*

200. Pinellas County Attorney's Office, *Attorneys for Defendant*

201. Pinkstaff, Tiffiny, *Attorney for Defendant*

202. Poder LatinX, *Intervenor Plaintiff-Appellee*

203. Price, Matthew, *Declarant for Plaintiffs*

204. Price, Tara, *Attorney for Intervenor Defendant*

205. Proaño, Juan, *Declarant for Plaintiffs*

206. Pryor, Harold, *Defendant*

207. Ramba, David, *Declarant for Defendants-Appellants*

208. Reardon, Kassandra, *Attorney for Intervenor Defendant*

209. Republican Party of Florida, *Intervenor-Defendant*

210. Reynolds Perez, Devona, *Attorney for Defendant*

211. Rich, Shayna, *Declarant for Plaintiffs*

212. Riley, Heather, *Defendant*

213. Ritter, Quinn, *Attorney for Plaintiffs-Appellees*

214. Roehrig, Kristen, *Attorney for Intervenor Plaintiffs-Appellees*

215. Rokita, Theodore, Attorney General of Indiana, *Amicus Curiae*

216. Roper Townsend & Sutphen, *Attorneys for Defendants*

217. Rosenthal, Oren, *Attorney for Defendant*

218. Ruiz, Cesar, *Attorney for Intervenor Plaintiffs-Appellees*

219.   Scheiner, Will, *Defendant*

220.   Scoon, Cecile, *Intervenor Plaintiff-Appellee*

221.   Scott, Dale, *Attorney for Defendant*

222.   Scott, Joe, *Defendant*

223.   Seyfang, Amanda, *Defendant*

224.   Shapiro, Avner, *Attorney for Plaintiffs-Appellees*

225.   Shatzman, Meryl, *Declarant for Plaintiffs*

226.   Shaud, Matthew, *Attorney for Defendant*

227.   Shutts & Bowen, LLP, *Attorneys for Intervenor-Defendant*

228.   Simmons, Jordan, *Declarant for Plaintiffs*

229.   Simmons, Jordan, *Plaintiff-Appellee*

230.   Skrmetti, Jonathan, Attorney General of Tennessee, *Amicus Curiae*

231.   Smart & Safe Florida, *Intervenor Plaintiff-Appellee*

232.   Smith, Diane, *Defendant*

233.   Smitha, Bridget, *Attorney for Intervenor Plaintiffs-Appellees*

234.   Southerland, Dana, *Defendant*

235.   Southern Poverty Law Center, *Attorneys for Plaintiffs-Appellees*

236.   Spears, Sara, *Attorney for Defendant-Appellant*

237.   Stafford III, William H., *Attorney for Defendant-Appellant*

238.   Stafford, William B., *Attorney for Plaintiff-Appellee*

239.   State Democracy Defenders, *Attorneys for Intervenor Plaintiffs-Appellees*

240. State of Alabama, *Amicus Curiae*

241. State of Alaska, *Amicus Curiae*

242. State of Georgia, *Amicus Curiae*

243. State of Indiana, *Amicus Curiae*

244. State of Kansas, *Amicus Curiae*

245. State of Louisiana, *Amicus Curiae*

246. State of Missouri, *Amicus Curiae*

247. State of Montana, *Amicus Curiae*

248. State of Nebraska, *Amicus Curiae*

249. State of North Dakota, *Amicus Curiae*

250. State of South Carolina, *Amicus Curiae*

251. State of Tennessee, *Amicus Curiae*

252. State of Texas, *Amicus Curiae*

253. State of Utah, *Amicus Curiae*

254. State of West Virginia, *Amicus Curiae*

255. Stearns Weaver Miller, *Attorneys for Intervenor Plaintiffs-Appellees*

256. Steiner, Nocholas, *Attorney for Plaintiff-Appellee*

257. Stewart, Gregory, *Attorney for Defendant*

258. Stinson-Brown, Tomi, *Defendant*

259. Swain, Robert, *Attorney for Defendant*

260. Swan, Leslie, *Defendant*

261. Szilagyi, Heather, *Attorney for Intervenor Plaintiffs-Appellees*

262. Taghdiri, Pausha, *Attorney for Defendants*

263. Tartaglia, Melissa, *Attorney for Defendants*

264. Taylor, Sherry, *Defendant*

265. Taylor, Treg, Attorney General of Alaska

266. Tessitore Mari Scott PLLC, *Attorneys for Defendant*

267. The Arizona Legislature, *Amicus Curiae*

268. Todd, Stephen, *Attorney for Defendant*

269. Turner, Ron, *Defendant*

270. Uthmeier, James, Florida Attorney General, *Defendant-Appellant*

271. Valenti, Leah, *Defendant*

272. Villane, Tappie, *Defendant*

273. Volusia County Attorney's Office, *Attorneys for Defendant*

274. Walker, Gertrude, *Defendant*

275. Walker, Mark E., *U.S. District Court Judge*

276. Walsh, Marc, *Declarant for Plaintiffs*

277. Ward, Dennis, *Defendant*

278. Ward, Nina, *Defendant*

279. Wassmer, Carolina, *Declarant for Plaintiffs*

280. Wells, Jacqueline, *Declarant for Plaintiffs*

281. Wermuth, Fredrick, *Attorney for Plaintiffs-Appellees*

282.   Wertz, Debbie, *Defendant*

283.   White, Jessica, *Declarant for Plaintiffs*

284.   Wilcox, Wesley, *Defendant*

285.   Williams, H. Russell, *Defendant*

286.   Williams, Kenya, *Defendant*

287.   Wilson, Alan, Attorney General of South Carolina, *Amicus Curiae*

288.   Worrell, Monique, *Defendant*

289.   Wren, Gader, *Attorney for Amicus Curiae*

290.   Wrigley, Drew, Attorney General of North Dakota, *Amicus Curiae*

291.   Wyler, Douglas, *Attorney for Defendants*

292.   Zarian, Michael, *Attorney for Amicus Curiae*

Per Circuit Rule 26.1-2(c), Defendants-Appellants Florida Secretary of State and

Florida Attorney General certify that the CIP contained herein is complete.

Dated: October 8, 2025

/s/ William H. Stafford, III                    /s/ Mohammad O. Jazil
William H. Stafford, III                          Mohammad O. Jazil
*Counsel for Defendant-Appellant Florida*   *Counsel for Defendant-Appellant Florida*
*Attorney General*                                *Secretary of State*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Preliminary Statement ............................................................................................ v

Statement Regarding Oral Argument .................................................................... 1

Introduction ........................................................................................................... 2

Jurisdictional Statement ........................................................................................ 3

Statement of the Issues.......................................................................................... 3

Statement of the Case ............................................................................................ 3

      I.     Factual Background ................................................................... 3

      II.    Procedural Background............................................................. 9

Standard of Review .............................................................................................. 13

Summary of the Argument.................................................................................... 13

Argument .............................................................................................................. 13

      I.     The residency and citizenship restrictions in HB1205 implicate
            conduct, not speech ............................................................. 13

      II.    The other preliminary injunction factors also favor the State ......... 22

Conclusion ............................................................................................................ 23

Certificate of Compliance .................................................................................... 25

Certificate of Service ........................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez,*
    585 U.S. 579 (2018) ........................................................................................ 22

*Americans for Prosperity Foundation v. Bonta,*
    594 U.S. 595 (2021) ........................................................................................ 21

*\*Biddulph v. Mortham,*
    89 F.3d 1491 (11th Cir. 1996) .................................................................. 14, 19

*Brnovich v. DNC,*
    594 U.S. 647 (2021) ........................................................................................ 21

*\*Buckley v. American Constitutional Law Foundation,*
    525 U.S. 182 (1999) ..................................................................................*passim*

*Chandler v. City of Arvada,*
    292 F.3d 1236 (10th Cir. 2002) ...................................................................... 18

*Crawford v. Marion County Election Board,*
    553 U.S. 181 (2008) ........................................................................................ 22

*Florida State Conferences of Branches & Youth Units of the NAACP v. Byrd,*
    4:23-cv-215, (N.D. Fla. Apr. 29, 2024) ........................................................... 8

*Forsyth County. v. U.S. Army Corps of Engineers,*
    633 F.3d 1032 (11th Cir. 2011) ...................................................................... 13

*Fort Lauderdale Food not Bombs v. City of Fort Lauderdale,*
    11 F.4th 1266 (11th Cir. 2021) ....................................................................... 20

*Green v. Mortham,*
    155 F.3d 1332 (11th Cir. 1998) ...................................................................... 21

*League of Women Voters of Florida v. Browning,*
    575 F. Supp. 2d 1298 (S.D. Fla. 2008) ..................................................... 15, 16

*League of Women Voters of Florida, Inc. v. Florida Secretary of State,*
66 F.4th 906 (11th Cir. 2023) ...............................................................22-23

*\*Meyer v. Grant,*
486 U.S. 414 (1988) ...............................................................*passim*

*Munro v. Socialist Workers Party,*
479 U.S. 189 (1986)............................................................... 22

*Rumsfeld v. FAIR,*
547 U.S. 47 (2006)............................................................... 16

*Purcell v. Gonzalez,*
549 U.S. 1 (2006)............................................................... 21

*Texas v. Johnson,*
491 U.S. 397 (1989)............................................................... 20

*United States v. O'Brien,*
391 U.S. 367 (1968)............................................................... 19

*Virginia v. Black,*
538 U.S. 343 (2003)............................................................... 20

*We the People PAC v. Bellows,*
40 F.4th 1 (1st Cir. 2022) ............................................................... 18

*Williams-Yulee v. Florida Bar,*
575 U.S. 433 (2015)............................................................... 23

*Wilmoth v. Secretary of New Jersey,*
731 F. App'x 97 (3d Cir. 2018)............................................................... 18

*Yes on Term Limits, Inc. v. Savage,*
550 F.3d 1023 (10th Cir. 2008)............................................................... 18

**Statutes**

28 U.S.C. § 1292 ............................................................... 7

28 U.S.C. § 1331 ............................................................... 3

Florida Constition, Article XI, § 3.................................................................. 3

Colorado Revised Statutes § 1-40-110 ........................................................ 15

Colorado Revised Statutes § 1-40-112 ........................................................ 15

Florida Statutes § 97.022.............................................................................. 4

Florida Statutes § 100.371........................................................................ 3, 4

Maine Revised Statutes Title 21-A, § 903-A................................................ 18

## PRELIMINARY STATEMENT

In this brief, "Doc." citations refer to docketed documents in the district court. The accompanying page numbers are the blue page numbers on the upper-right side of the docketed documents.

"25-12370, Doc." refers to the docket entry in this Court. So, for example, references to page 9 of the stay panel's decision are: "25-12370, Doc.97-2 at 9."

Several House Bill 1205 provisions are referenced in this motion. Bill line numbers are referred to as "ll." with the line numbers. A citation to a provision in HB1205 thus looks like this: "HB1205 ll.1-2." The full version of the bill can be viewed here: https://www.flsenate.gov/Session/Bill/2025/1205/BillText/er/PDF.

## STATEMENT REGARDING ORAL ARGUMENT

Though this appeal concerns important constitutional questions, this Court has granted a stay of the preliminary injunction at issue. Trial in the underlying case is also scheduled for January 26, 2025, making a resolution of this appeal (and various cross appeals) unlikely before the conclusion of trial. It's thus best to have oral argument from any appeal of a final judgment in the underlying case but *not* in this appeal concerning the preliminary injunction.

# **INTRODUCTION**

Neither Californians nor Colombians have a First Amendment right to *collect* completed citizen-initiative petitions from Floridians who wish to change the Florida Constitution. The district court erred in saying that they do.

Florida's citizen-initiative process has problems. Circulators have stolen sensitive information from voter petitions. Some have tampered with petitions, filling in or changing voter information. Others have filled in petitions for the deceased.

Investigations have been conducted. Arrests made. Sentences imposed.

Yet the work of stamping out fraud is difficult. Among other things, that's because petition sponsors often pay out-of-state contractors to collect signed petitions. The out-of-state contractors go on to hire out-of-state subcontractors who then hire out-of-state petition circulators. Law enforcement must thus work through a nesting doll-like setup to investigate, arrest, and obtain a conviction for petition fraud.

The Florida Legislature recognized as much. *See* HB1205 ll.285-90. It passed House Bill 1205 to address the problems with the citizen-initiative process. The bill bars non-Florida residents and non-citizens from collecting signed petitions.

To be clear, non-residents and non-citizens remain free to *talk* to Florida voters about the issues. These out-of-staters just can't *collect* signed petition forms. Speech remains unencumbered. Certain conduct—the collecting of signed petitions—is all that's prohibited. For good reason.  The district court disagreed.

This Court should reverse the order granting a preliminary injunction.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) to review the district court's preliminary injunction order. The district court issued the order on July 8, 2025. Doc.283. The Secretary and Attorney General filed a timely appeal on July 11, 2025. Doc.284.

## STATEMENT OF THE ISSUES

Whether the district court erred in concluding, as part of its preliminary injunction order, that Florida's residency and citizenship restrictions on petition circulators violate the First Amendment.

Whether the remaining factors for a preliminary injunction favor the State or Plaintiffs.

## STATEMENT OF CASE

### I.   Factual Background

**A.** Floridians can amend their state constitution through the citizen-initiative process. Fla. Const. art. XI, § 3. Those who wish to propose changes can register as a petition sponsor. Fla. Stat. § 100.371(2). Their task is to collect signed petition forms from a significant portion of the Florida electorate, 880,062 voters. Fla. Const. art. XI, § 3 (detailing requirements).

Petition forms are presented to voters for their signatures. The forms include the "full text of the proposed amendment," the "name and address of the sponsor," and the "bar code or serial number associated with the initiative petition." HB1205 ll.530-

36. If a voter wishes to sign the petition, the voter must provide a full name, "address and county of legal residence," "voter registration number or date of birth," and Florida "driver license number" or "identification card number" or "the last four digits of" a "social security number." HB1205 ll.537-46.

Once a signed petition is collected, it must be promptly delivered to the supervisor of elections in the voter's county of residence; the petition sponsor has a "fiduciary" duty to ensure that it happens. Fla. Stat. § 100.371(7)(a).

And with the citizen-initiative process, the election machinery never stops. The process goes on each election cycle, without end. Petition sponsors are constantly sending supervisors of elections signed petition forms, and supervisors are under a deadline to check and validate those petitions. Fla. Stat. § 100.371(14). During this "validity check by the Supervisor of Elections," "much of the fraud is initially spotted—some by mismatched signatures, some petitions include deceased Floridians, some include incorrect personal identifying information, etc." Doc.103-3 at 10.

**B.** To put it bluntly, citizen-initiative fraud is not rare. The Florida Legislature knows this because, under Florida law, the Office of Election Crimes and Security provides periodic reports to the legislature. Fla. Stat. § 97.022(7); Doc.103-2 (2024 report); Doc.103-3 (2023 report). The reports say that there's "widespread petition fraud in connection with a number of initiative petitions." Doc.103-2 at 8. Consider just a few highlights from the thousands of pages provided to the legislature:

- Petition circulators use "voters personal identifying information to complete the initiative petition." Doc.103-3 at 10; *see also* HB1205 ll.251-52, 304-09. Some bad actors "don't even attempt to hide the fraud, as the handwriting is the same for each voter; some names even appear to be in alphabetical order as if they were copied directly off a list or database." Doc.103-3 at 10.

- Circulators have "tampered with petition forms after they were signed and submitted by electors." Doc.103-2 at 9; *see also* HB1205 ll.304-09. One petition circulator stated that, after receiving a petition, the subcontractor he worked for would "use a website to verify personal identifying information" and "fill in the missing information" if "incomplete." Doc.103-2 at 9; *see also* HB1205 ll.304-09.

- Circulators have also "forged signatures, submitted duplicate signatures on behalf of voters, and signed for deceased voters." Doc.103-3 at 9; *see also* HB1205 ll.247-53. One bad actor "submitted petitions on behalf of 23 deceased individuals in at least four counties." Doc.103-2 at 12; *see also* HB1205 ll.291-95.

One instance of fraud is harmful. Thousands are devastating.

Take the actions from circulators associated with one petition sponsor, Smart & Safe, a group advocating for a constitutional right to recreational marijuana. The reports state that over 35,000 signed and *validated* petitions were collected and submitted by only thirty-five individuals known to be fraudsters who worked for Smart & Safe. Doc.103-2 at 6. One Smart & Safe circulator—a "lead" petition circulator, tasked with "training new team members"—put fictitious names on petition forms. Doc.103-2 at 16-17. She submitted 3,980 signed petitions on behalf of Smart & Safe. Doc.103-2 at 16. Supervisors of elections invalidated 2,064 of the petitions. Doc.103-2 at 16. Another

circulator submitted 3,984 signed petitions, and supervisors of elections invalidated 2,438. Doc.103-2 at 19.

What's more, "the Duval County Supervisor of Elections reported" "that a member of his elections staff had her personal identification information misappropriated, and signature forged on petition forms submitted by a Smart & Safe circulator." Doc.103-2 at 10. So, election staff aren't immune from fraud, either.

**C.** The Office of Election Crimes and Security highlights a particular issue in the citizen-initiative process: out-of-state circulators and out-of-state entities. Its reports explain that petition sponsors are:

> able to delegate key aspects of its petition initiative activities to out-of-state entities, who then subcontracted with other individuals who were even further outside the reach of Florida authorities. These challenges made it incredibly difficult for investigators and law enforcement to investigate and prosecute subcontractors perpetuating petition fraud, let alone before the petition was certified for ballot placement.

Doc.103-2 at 8; *see also* HB1205 ll.285-90 (recognizing same).

The reports provide an example. Last election cycle, one petition sponsor hired an out-of-state entity, who hired another entity, who hired petition circulators. Doc.103-2 at 482. This made things difficult for law enforcement when they tried to obtain documents from that petition sponsor, which was accused of illegally compensating circulators. Doc.103-2 at 8. The sponsor simply claimed that it didn't have *any* of the requested documents; apparently, one of its hired entities had them.

Doc.103-2 at 8. And when the State tried to get documents from the entity, it stonewalled behind its status as a California company. The reports lament that:

> The State's ability to execute the subpoena has been hampered by the fact that [the out-of-state entity] is not a registered business entity in Florida. Many of the subcontractors [the out-of-state entity] worked with are not registered to do business in Florida, either. And unlike other states where constitutional amendments can be proposed by initiative petition, Florida has no state residency requirement for paid petition circulators.
>
> Consequently, many [petition sponsor] paid circulators have few if any ties to Florida and list addresses in other, sometimes faraway, states. Some appear to be transient, going from state to state to do similar work. In fact, two paid circulators arrested for petition fraud . . . also face charges for petition fraud in Kansas after leaving Florida. The out-of-state residency of key suspects and witnesses has made for significant investigative challenges.

Doc.103-2 at 8 (citation removed, paragraph space added).

The harm continues. The statewide prosecutor's office explained to the district court that it's "aware of several petition circulator investigations that are still open and pending[,] primarily because the circulator is not a Florida resident and is currently living outside of our jurisdiction." Doc.267-2 ¶ 15.

**D.** Non-citizens pose problems, as well. Conceptually, they too are out-of-staters. "Just as non-resident circulators and petition gathering companies have proven difficult to locate and investigate," one prosecutor said, "the same would hold true for non-citizen petition circulators." Doc.267-2 ¶ 17.

And with non-citizens, there's always a risk that they can leave the state, given their strong ties to other countries, and not turn in election forms on time. The State

knows, for example, that when non-citizens collect voter-specific forms—like voter registration forms—they can leave (and likely have left) the jurisdiction before delivering those forms. That's based on evidence produced in a Northern District of Florida trial. *NAACP v. Byrd,* 4:23-cv-215, Doc.311 at 13 (N.D. Fla. Apr. 29, 2024).

More broadly, there's a public integrity concern with the participation of non-citizens in Florida elections. The Office of Election Crimes and Security reports state that "Florida has continued to investigate and make criminal referrals through" the office "for instances of non-citizen voting." Doc.103-2 at 26.

**E.** The Florida Legislature stepped in to change things during the 2025 legislative session. It passed HB1205, an election-reform package aimed at cleaning up the citizen-initiative process. In HB1205's findings of fact, the legislature acknowledged the accounts of fraud detailed in the Office of Election Crimes and Security reports. HB1205 ll.234-357. It also highlighted the problems that transient actors pose to the citizen-initiative process and law enforcement. HB1205 ll.277-90, 336-41. And, among other things, the Florida Legislature made the following findings of fact:

> WHEREAS, despite the fiduciary duty prescribed by Florida law, sponsors of initiative petitions have failed to cooperate with investigations and have attempted to deflect responsibility for the actions of petition circulators to contractors and subcontractors, with the sponsors denying that they have custody or control of documents requested by state officials[,]
>
> WHEREAS, sponsors, contractors, and petition circulators have blatantly attempted to evade investigation by delegating key aspects of petition activities to out-of-state entities, who then subcontracted with other

individuals who were even further outside the reach of Florida authorities[.]

HB1205 ll.277-90.

As a result, and relevant here, HB1205 prevents non-residents and non-citizens from "collect[ing]" signed petitions. *E.g.*, HB1205 ll.598-603. The bill states that:

> (b) A person may not collect signatures or initiative petitions if he or she:
> . . .
> 2. Is not a citizen of the United States.
> 3. Is not a resident of this state.

HB1205 ll.598-603. Signed petitions submitted by ineligible circulators are invalid. HB1205 ll.967-70. Registered circulators must also verify that they are residents of Florida and citizens of the United States. HB1205 ll.635-43.

Notably, the legislation focuses on the collection of signed petition forms. Any volunteer, resident, non-resident, citizen, or non-citizen circulator can speak for or against the objective of a petition. Anyone can encourage another to sign (or not sign) a petition. What's affected is the conduct that occurs after that speech: collecting a signed petition. That's it. The State decided that non-residents and non-citizens can't *collect* forms with a Florida voter's signature and other personal information, such as the driver license number or social security number.

## II. Procedural Background

**A.** The underlying case concerns several aspects of HB1205. What started with one plaintiff group grew into a case with five. The Florida Decides Healthcare Plaintiffs originated this case, but four other groups—the Smart & Safe Plaintiff, the Florida

9

Right to Clean Water Plaintiffs, the League of Women Voters of Florida Plaintiffs, and the Poder Latinx Plaintiffs—intervened. All five groups filed complaints and (in the second round of preliminary injunction briefing) sought preliminary relief.

Only three of the plaintiff groups include petition sponsors. Florida Decides Healthcare is sponsoring a petition to expand Medicaid access in Florida. Smart & Safe is again sponsoring a petition to legalize recreational marijuana in Florida. And Florida Right to Clean Water is sponsoring a petition concerning environmental rights.

The two remaining plaintiff groups—the League of Women Voters of Florida Plaintiffs and the Poder Latinx Plaintiffs—are merely third-party groups who wish to assist with citizen-initiative efforts. Specifically, they wish to collect and deliver signed petitions from Florida voters.

As revealed in this case so far, Plaintiffs are doing nothing to allay the Florida Legislature's fears. In fact, they're exasperating them. Plaintiffs rely on out-of-state circulators and entities. Florida Decides Healthcare is using an out-of-state entity, the Outreach Team, to assist with its efforts. Doc.168-1 ¶ 6. Smart & Safe uses an out-of-state vendor and out-of-state consulting group. Doc.105 at 11.

Circulators are coming into Florida from all over the country. Plaintiffs are using circulators who reside in places like California, Michigan, and Texas, and worked on petition campaigns in Arizona, Arkansas, California, Georgia, Illinois, Maryland, Michigan, Missouri, Nebraska, Nevada, North Carolina, Ohio, Oregon, Pennsylvania,

South Dakota, Texas, Washington, Wisconsin, and Wyoming—in addition to Florida. Doc.166-3 ¶¶ 2, 4-5; Doc.166-4 ¶¶ 2, 5; Doc.166-6 ¶¶ 3-4; Doc.168-3 ¶ 2.

Many of those circulators don't want to be in Florida for the long haul and don't intend to avail themselves of the constitutional changes they're seeking. One Smart & Safe declarant says, "I have no reason to be in Florida other than my desire to see the Initiative succeed on the ballot." Doc.166-4 ¶ 13. Another explains that non-resident circulators' "only reason for being in Florida is to collect petitions." Doc.166-1 ¶ 9.

Plaintiffs are also relying on non-citizens to collect petitions, though they don't know whether the non-citizens are in the country legally. That's so because Plaintiffs don't conduct background checks and have no intention to do so. For example, Florida Decides Healthcare says that "we do not have the ability to verify a circulator's citizenship." Doc.168-1 ¶ 15. Florida Right to Clean Water similarly says that it "does not have the resources or capacity to conduct citizenship verification checks and is concerned that despite its best efforts," it "will not be able to definitively ensure that non-U.S. citizens do not collect petitions for the campaign." Doc.171-1 ¶ 48.

**B.** All five plaintiff groups moved for preliminary relief, seeking to enjoin various HB1205 provisions, including the prohibition on non-residents and non-citizens collecting signed petitions. (There was an earlier round of preliminary-injunction proceedings, but none of those challenges concern the at-issue provisions here.)

The district court denied some of Plaintiffs' requested relief, but it enjoined the non-resident and non-citizen provisions. The court held that the provisions violated the

First Amendment. Doc.283 at 19-20. According to the district court, the provisions impaired speech, the "one-on-one communication between petition gatherers and voters." Doc.283 at 20. In doing so, the court rejected the State's argument that the provisions affected only conduct, not speech. Doc.283 at 19 n.17. The court grouped all petition-related activities together—the front-end speech with voters, along with back-end conduct of collecting and delivering signed petitions.

Under heightened scrutiny, the district court then held that the State's prohibitions on non-residents and non-citizens weren't narrowly tailored. Doc.283 at 23. The court suggested that the State must come forward with more (and more specific) instances of fraud before the State can enforce its non-resident and non-citizen provisions. Doc.283 at 26-27. The district court also concluded that Plaintiffs satisfied the other preliminary injunction elements, Doc.283 at 31-32, and enjoined the enforcement of the at-issue provisions as to the specific plaintiff groups and their petition circulators. The court declined to stay its ruling pending appeal. Doc.283 at 33.

The State timely appealed, Doc.284, and sought a stay of the district court's preliminary injunction order. The Florida Right to Clean Water Plaintiffs filed a cross appeal, Doc.312, as did the League of Women Voters Plaintiffs, Doc.331.

**C.** On September 9, 2025, a panel of this Court granted the State's motion to stay the district court's preliminary injunction order. Notably, the stay panel "review[ed] the merits of the State's position that the residency and citizenship requirements of H.B.

1205 do not violate the First Amendment," and "conclude[d] that the State is likely to prevail on this argument in its appeal." 25-12370, Doc.97-2 at 9.

## STANDARD OF REVIEW

While the abuse of discretion standard generally applies in appeals from a district court's preliminary injunction order, the underlying findings of fact are assessed for clear error and conclusions of law are assessed de novo. *Forsyth County v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011).

## SUMMARY OF THE ARGUMENT

HB1205's non-resident and non-citizen provisions affect conduct, not speech. The provisions are therefore analyzed under rational-basis review—and they easily satisfy such review. Even if heightened scrutiny applies, the provisions are narrowly tailored to serve compelling governmental interests. The other factors for a preliminary injunction also favor the State: Plaintiffs won't be substantially injured and the State's enforcement of HB1205's anti-fraud measures will further the public interest.

## ARGUMENT

I.   **The residency and citizenship restrictions in HB1205 implicate conduct, not speech**

A.   *The rational basis test applies to HB1205's restrictions*

The citizen-initiative process involves a specific area of First Amendment law. Different citizen-initiative regulations undergo different constitutional scrutiny. As this Court put it, there's "an explicit distinction between" the regulation of "the initiative

process in general and the power to regulate the exchange of ideas about political changes sought through the process." *Biddulph v. Mortham*, 89 F.3d 1491, 1498 n.7 (11th Cir. 1996). Because the State has "broad discretion in administering its initiative process," regulations that go to the process of collecting initiative petitions must satisfy rational-basis review. *Id.* at 1500. Heightened scrutiny "only" applies "in certain narrow circumstances," namely instances where (1) the State enacts "regulations that [are] content based or ha[ve] a disparate impact on certain political viewpoints," (2) where the State "appl[ies] facially neutral regulations in a discriminatory manner," or (3) where the State "impermissibly burden[s] the free exchange of ideas about the *objective* of an initiative proposal." *Id.* (emphasis added).

Put another way, it matters whether there's a regulation on the free exchange of ideas—the "objective of an initiative proposal"—or just the process for collecting petitions. *Id.* And it was the objective of an initiative proposal that was being regulated in *Meyer v. Grant*, a case about Colorado's ban on paid petition circulators. 486 U.S. 414 (1988). That's because Colorado's ban was broad. The law was so broad, in fact, that it prevented paid circulators from even approaching voters, discussing petitions, and encouraging voters to sign:

> Any person, corporation, or association of persons who directly or indirectly pays to or receives from or agrees to pay to or receive from any other person, corporation, or association of persons any money or other thing of value in consideration of or as an inducement *to the circulation of an initiative or referendum petition* or *in consideration of or as an inducement to the signing*

*of any such petition* commits a class 5 felony and shall be punished as provided in section 18-1-105, C. R. S. (1973).

*Id.* at 416 n.1 (emphases added) (quoting Colo. Rev. Stat. § 1-40-110 (1980)).

As one court within this circuit put it, "the statute at issue in *Meyer* directly regulated the conditions under which plaintiffs could *interact* with members of the public regarding an issue of political concern." *League of Women Voters of Fla. v. Browning*, 575 F. Supp. 2d 1298, 1321 (S.D. Fla. 2008) (emphasis added). That is the lens through which any snippets from *Meyer* concerning the First Amendment law must be viewed.

The Supreme Court understandably found that the Colorado law at issue in *Meyer* violated the First Amendment. The law, in a real sense, "limit[ed] the number of voices who" would "convey" the petition sponsors' "message" and "therefore, limit[ed] the size of the audience they" could "reach," which "ha[d] the inevitable effect of reducing the total quantum of speech on a public issue." 486 U.S. at 422-23.

The same was true in a subsequent citizen-initiative case from Colorado, *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999). The laws mentioned in the case were similarly broad and affected speech. The Court thus engaged in the same analysis. *See, e.g., id.* at 188 n.2; Colo. Rev. Stat. § 1-40-112(1) (1998) ("[n]o section of a petition for any initiative or referendum measure *shall be circulated* by any person who is not a registered elector" (emphasis added)).

In both *Meyer* and *Buckley*, it mattered that the citizen-initiative laws touched speech and not just conduct. That comports with First Amendment case law, more

generally. It's blackletter law that speech is afforded First Amendment protection. Conduct isn't. *Rumsfeld v. FAIR*, 547 U.S. 47, 60 (2006). A law that affects what a person "must *do*," as opposed to a law that affects what a person "may or may not *say*," is a law that regulates conduct. *Id.* Those laws get rational-basis review.

This plays out in other election contexts. Take third parties registering people to vote. There's a clear distinction between (1) a volunteer *speaking* to a voter, *talking* to the voter about the importance of voting, and *encouraging* the voter to register, and (2) a volunteer *possessing* the completed registration, *bringing* it to a supervisor of elections office, and *delivering* it on time. That's why "the collection and handling of" election forms, like "voter registration applications[,] is not inherently expressive activity" and not speech. *Browning*, 575 F. Supp. 2d at 1319. It's "simply" conduct, "an administrative aspect of the electoral process—the handling of voter registration applications by third-party voter registration organizations *after* they have been collected from applicants." *Id.* at 1322.

The same applies here. Again, the non-resident and non-citizen provisions only affect conduct, not speech. The provisions in HB1205 look nothing like the provisions in *Meyer* and *Buckley*. Non-residents and non-citizens can still speak freely on any issue with anyone. They simply can't "collect signatures or initiative petitions" to then deliver those completed petitions to election officials. HB1205 ll.598-603.

Rational-basis review applies to Florida's process-specific provisions. As discussed above, the State offered more than enough rational reasons for the provisions.

**B.**     *Plaintiffs miss the mark in their attempt to lump together speech and conduct*

Plaintiffs nevertheless insist that the act of collecting and then delivering signed petition forms (conduct) is the same as the discussion of issues of public importance (speech). They say that *Meyer*, *Buckley*, and out-of-circuit cases support the proposition. They're wrong.

Start with *Meyer*. It concerned a prohibition on the "circulation of an initiative or referendum petition," signed or unsigned. 486 U.S. at 416 n.1 (quoting Colo. Rev. Stat. § 1-40-110 (1980)). As the Supreme Court put it, the regulation prevented paid circulators from having "conversations with voters in an effort to get them to sign the petition[s]." *Id.* at 421 n.4. And, in *that* circumstance, given *that* statute, the Court said that the "circulation of an initiative petition" "involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Id.* at 421.

*Buckley* concerned the same set of statutes from the same state that made no distinctions between the discussion of an issue (the speech that precedes the voter's signature) from the collection of completed petition forms (the conduct that comes after). By contrast, Florida's statutory scheme applies only to the latter.

Plaintiffs' preferred out-of-circuit cases also concern speech. Take *We the People PAC v. Bellows*, and Maine's ban on out-of-state resident circulators. 40 F.4th 1 (1st Cir. 2022). The law there defined a "circulator" as someone who "*solicits* signatures for the petition by *presenting the petition to the voter*, *asking the voter* to sign the petition and personally witnessing the voter affixing the voter's signature to the petition." *Id.* at 4 (emphases added) (quoting Me. Stat. tit. 21-A, § 903-A). Soliciting someone for a signature, asking them to support a cause, or circulating a blank petition for a coveted signature is speech. It requires "face-to-face, interactive communication" intended to convince another person to rally to a cause. *Id.* at 14. *Meyer* tells us that restricting such speech triggers heightened scrutiny. But placing the *signed* petition in an envelope and mailing it, or otherwise delivering it within a certain timeframe, is conduct. So too is the requirement that only residents and citizens may deliver the signed, completed petitions.

Other out-of-circuit cases follow a similar pattern. The cases concern statutes that, unlike Florida's scheme, implicate speech. *See, e.g.*, *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1029 (10th Cir. 2008) (ban on "circulat[ing]" petitions); *Chandler v. City of Arvada*, 292 F.3d 1236, 1239, 1241 (10th Cir. 2002) (same); *Wilmoth v. Sec'y of N.J.*, 731 F. App'x 97, 99-103 (3d Cir. 2018) (same).

Commingling speech with conduct presents another problem: there's no limiting principle. In Plaintiffs' telling, anything that touches the citizen-initiative process is speech, and such speech, they argue, must get heightened (even strict) scrutiny. Under Plaintiffs' approach, the *Buckley* affidavit would be considered a speech regulation and

subject to heightened review, because it's part of the petition-circulation process. Yet the Supreme Court didn't see things like that. 525 U.S. at 198-99. And, under Plaintiffs' approach, *Buckley*'s "arsenal of safeguards"—laws that prevent fraudulently signing petitions—would all implicate speech, and would have to withstand the heat of heightened review, because all such laws would touch on the petition-circulation process. *Id.* at 205.

There's a better answer and one this Court has long recognized: "an explicit distinction" exists between "regulat[ing] the exchange of ideas about political changes sought through the process" and regulating the process itself. *Biddulph*, 89 F.3d at 1498 n.7. Only the former is speech subject to heightened scrutiny. *Id.* The latter is conduct subject to rational-basis review. *Id.* Florida's laws concern conduct.

## C.     *The stay panel agrees with the State's approach*

More recently, a panel of this Court agreed with the State. It read the Supreme Court precedents in much the same way. 25-12370, Doc.97-2 at 10-12. It distinguished the out-of-circuit cases in much the same way. 25-12370, Doc.97-2 at 12-13. And it recognized that the State's position remains firmly tethered to this Court's prior decision in *Biddulph*. 25-12370, Doc.97-2 at 13-14. In sum, there's no speech linked with the collection of signed petitions. Collection is pure conduct. Front-end speech is entirely separate from the back-end conduct that's regulated here.

Though "skeptical" of its applicability, the stay panel even subjected Florida's restrictions to the expressive conduct test from *United States v. O'Brien*, 391 U.S. 367

(1968). 25-12370, Doc.97-2 at 15. Florida's satisfied the test, per the panel. That's because "Florida undoubtedly has a sufficiently important, and even (as recognized by the district court) a compelling, interest in combatting fraud in the petition-initiative process." 25-12370, Doc.97-2 at 18 (cleaned up). "And H.B. 1205's chosen means are substantially related to the important interest of preserving the integrity of the electoral process, since the residency and citizenship requirements' incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 25-12370, Doc.97-2 at 18 (cleaned up).

A word about the panel's skeptisim about the expressive conduct test. It's well founded. Taking a signed sheet of paper from one place to another has no expressive component. It's not the same as burning an American flag to make a political point, *Texas v. Johnson*, 491 U.S. 397 (1989), burning a cross as part of a sick ritual, *Virginia v. Black*, 538 U.S. 343 (2003), or feeding people in a park to critique the choices that society makes when spending money on bombs instead of food, *Ft. Lauderdale Food not Bombs v. City of Ft. Lauderdale*, 11 F.4th 1266 (11th Cir. 2021). "Florida's rules for nonresidents and noncitizens collecting, delivering, or otherwise physically possessing signed petition forms" are, at best, ministerial tasks—all forms must get to elections officials so that they may be counted. 25-12370, Doc.97-2 at 15 (cleaned up).

### D. *Florida's restrictions satisfy exacting scrutiny, as well*

Finally, should it apply, Florida's restrictions satisfy even the "exacting scrutiny" test from *Meyer*. 486 U.S. at 420. Exacting scrutiny requires a "substantial relation

between the" at-issue law "and a sufficiently important governmental interest." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 607 (2021) (cleaned up).

As noted above, HB1205's provisions serve compelling governmental interests—interests expressly mentioned in HB1205's findings of fact. HB1205 ll.234-357. Preventing election fraud, and ensuring the integrity of the ballot, are compelling governmental interests. *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006); *Brnovich v. DNC*, 594 U.S. 647, 685 (2021). So is "maintaining fairness, honesty, and order" in the election process. *Green v. Mortham*, 155 F.3d 1332, 1335 (11th Cir. 1998).

The evidence produced before the district court further shows that the provisions at issue are tailored to the State's compelling interests. It's undisputed that there's citizen-initiative fraud in Florida. *Supra*. And it should be undisputed that it's harder for the State to track down bad-acting non-residents, by virtue of their being out-of-staters. State prosecutors know this to be true: "several petition circulator investigations" are "still open and pending[,] primarily because the circulator is not a Florida resident and is currently living outside of our jurisdiction." Doc.267-2 ¶ 15. These concerns are magnified when petition sponsors hire out-of-state entities, who hire out-of-state entities, who hire out-of-state circulators. The State ran into these problems during the last cycle, and the Florida Legislature sought to remedy these issues through HB1205. *Supra*. And "[j]ust as non-resident circulators and petition gathering companies have proven difficult to locate and investigate, the same would hold true for

non-citizen petition circulators." Doc.267-2 ¶ 17. After all, there's an issue with non-citizens misbehaving in Florida elections. *Supra.*

## II. The other preliminary injunction factors also favor the State

### A. *Evidence of more harm to Floridians isn't needed*

If "the inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State," *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018), the record in this case amplifies those concerns. Petition gathering has become a seedy business. It's one that takes advantage of Floridians and their State Constitution's amendment process.

And more evidence of fraud isn't needed to justify the State's actions. In various contexts, the Supreme Court has held that (1) fraud prevention is neither an actuarial exercise nor a comparative dissertation, and (2) the State can enforce its anti-fraud laws before further fraud-related harm is even committed. Plaintiffs offer nothing to counter the following: *Crawford v. Marion County Election Board*, 553 U.S. 181, 194-96 (2008) ("The record contains no evidence of any such fraud actually occurring in Indiana at any time in its history," but "[w]hile the most effective method of preventing election fraud may well be debatable, the propriety of doing so is perfectly clear."); *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986) (the State "should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively"); *League of Women Voters of Florida, Inc. v. Florida Secretary of State*, 66 F.4th 905, 925 (11th Cir. 2023) ("Even if there were no evidence of voter fraud in Florida, our precedents would not require it before a bill like S.B. 90 could be adopted."); *see also Williams-Yulee v. Fla. Bar*,

575 U.S. 433, 447 (2015) (applying strict scrutiny, but not requiring "proof by documentary record" to support the "genuine and compelling" interest in the "concept of public confidence in judicial integrity").

**B.** *The stay panel recognized that the equities favor the State*

The stay panel agreed with the State on the other factors relevant to the issuance of a preliminary injunction. As the panel said, "[t]he State would be irreparably harmed were we to allow an injunction against Florida's restrictions on the initiative process to remain in place." 25-12370, Doc.97-2 at 21. And with the preliminary injunction in place, "Florida would be left unable to enforce H.B. 1205's rules governing the collection of initiative petitions until this appeal is resolved on the merits—rules that were legitimately enacted by representatives of its people and that are substantially likely to be upheld as constitutional." 25-12370, Doc.97-2 at 22 (cleaned up).

## CONCLUSION

For these reasons, the State asks this Court to reverse the district court's decision below and dissolve its preliminary injunction.

Dated: October 8, 2025

Respectfully submitted by,

JAMES UTHMEIER
  *Attorney General*

/s/ William H. Stafford III
William H. Stafford III
  SPECIAL COUNSEL
Sara E. Spears
  ASSISTANT ATTORNEY GENERAL
Complex Litigation Division
OFFICE OF THE ATTORNEY GENERAL
PL-01, The Capitol
Tallahassee, Florida 32399
William.Stafford@myfloridalegal.com
Sara.Spears@myfloridalegal.com
ComplexLitigation@myfloridalegal.com
(850) 414-3785

*Counsel for Defendant-Appellant Florida*
*Attorney General*

Ashley E. Davis
  GENERAL COUNSEL
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building, Suite 100
500 South Bronough Street
Tallahassee, Florida 32399
 (850) 245-6536
Ashley.Davis@dos.fl.gov

/s/ Mohammad O. Jazil
Mohammad O. Jazil
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, Florida 32301
 (850) 391-0503
mjazil@holtzmanvogel.com
zbennington@holtzmanvogel.com

*Counsel for Defendant-Appellant Florida*
*Secretary of State*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 27(d)(2)(A) because it contains 5,482 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: October 8, 2025

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing certificate was filed on ECF.

Dated: October 8, 2025

/s/ Mohammad O. Jazil
Mohammad O. Jazil