No. 25-12370

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

FLORIDA DECIDES HEALTHCARE, INC., *et al.*,

*Plaintiffs-Appellees*,

v.

FLORIDA SECRETARY OF STATE, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of Florida
No. 4:25-cv-211-MW-MAF (Walker, J.)

**BRIEF OF IDAHO, ALABAMA, ALASKA, GEORGIA, INDIANA, KANSAS, LOUISIANA, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, OKLAHOMA, SOUTH CAROLINA, TENNESSEE, TEXAS, UTAH, WEST VIRGINIA, AND THE ARIZONA LEGISLATURE, AS** *AMICI CURIAE* **IN SUPPORT OF APPELLANTS FLORIDA SECRETARY OF STATE AND FLORIDA ATTORNEY GENERAL**

RAÚL R. LABRADOR
ATTORNEY GENERAL

OFFICE OF IDAHO ATTORNEY
GENERAL
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
alan.hurst@ag.idaho.gov

ALAN M. HURST
Solicitor General

MICHAEL A. ZARIAN
Deputy Solicitor General

GADER WREN
Assistant Solicitor General

*Counsel for Amicus State of Idaho*
Additional Signatories Listed Below Signature Block

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1, the undersigned counsel certifies that in addition to the persons identified in the Certificate of Interested Persons and Corporate Disclosure Statement that Defendants-Appellants filed with the Court on October 8, 2025, ECF No. 111, the persons listed below are known to have an interest in the outcome of this case:

1. Cox, Stephen, J.,
2. Drummond, Gentner,
3. Hanaway, Catherine, L.,
4. State of Oklahoma.

Dated: October 15, 2025

*/s/ Alan M. Hurst*
Alan M. Hurst

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ..................................................................................................i

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES ............................................................................................iii

STATEMENT OF THE ISSUES.........................................................................................1

INTEREST OF *AMICI CURIAE* ......................................................................................1

SUMMARY OF THE ARGUMENT ...................................................................................2

ARGUMENT ..................................................................................................................2

   I.   States Have Broad Leeway to Regulate Direct Democracy. ......................2

   II.  Some Lower Courts Have Encroached on the State's Power to Regulate Direct Democracy. ...........................................................................................6

   III. The Court Should Avoid the Mistakes of Other Federal Courts and Follow the Text, History, and Tradition of the First Amendment. ............................8

CONCLUSION ..............................................................................................................10

## TABLE OF AUTHORITIES

**CASES**

*Angle v. Miller*,
  673 F.3d 1122 (9th Cir. 2012) ............................................................................6

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*,
  576 U.S. 787 (2015) ............................................................................................3

*Biddulph v. Mortham*,
  89 F.3d 1491 (11th Cir. 1996) ........................................................................5, 8

*Brnovich v. Democratic Nat'l Comm.*,
  594 U.S. 647 (2021) ............................................................................................6

*Brown v. Yost*,
  122 F.4th 597 (6th Cir. 2024) ............................................................................8

*Brown v. Yost*,
  133 F.4th 725 (6th Cir. 2025) ............................................................................7

*Buckley v. Am. Const. L. Found., Inc.*,
  525 U.S. 182 (1999) ............................................................................1, 2, 6, 10

*Comm. to Recall Dan Holladay v. Wiley*,
  120 F.4th 590 (9th Cir. 2024) ....................................................................... 3–8

*Hoyle v. Priest*,
  265 F.3d 699 (8th Cir. 2001) ............................................................................5

*Initiative & Referendum Inst. v. Walker*,
  450 F.3d 1082 (10th Cir. 2006) ........................................................................8

*John Doe No. 1 v. Reed*,
  561 U.S. 186 (2010) ............................................................................................3

*Little v. Reclaim Idaho*,
  140 S. Ct. 2616 (2020) ........................................................................................7

*Meyer v. Grant*,
  486 U.S. 414 (1988) ..................................................................................... 3, 10

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024) ............................................................................................9

*Munro v. Socialist Workers Party*,
  479 U.S. 189 (1986) ..........................................................................................10

*People Not Politicians Or. v. Clarno*,
  826 F. App'x 581 (9th Cir. 2020) ......................................................................6

*Reclaim Idaho v. Little*,
 469 F. Supp. 3d 988 (D. Idaho 2020) ................................................................. 7

*Rumsfeld v. F. for Acad. and Institutional Rts, Inc.*,
 547 U.S. 47 (2006) .............................................................................................. 9

*Taxpayers United for Assessment Cuts v. Austin*,
 994 F.2d 291 (6th Cir. 1993) ............................................................................... 5

*Thompson v. DeWine*,
 959 F.3d 804 (6th Cir. 2020) ............................................................................... 6

*United States v. Rahimi*,
 602 U.S. 680 (2024) ............................................................................................ 2

*Vidal v. Elster*,
 602 U.S. 286 (2024) ............................................................................................ 4

*Voting for America, Inc. v. Steen*,
 732 F.3d 382 (5th Cir. 2013) ............................................................................... 9

*Yost v. Brown*,
 145 S. Ct. 1957 (2025) ........................................................................................ 7

**CONSTITUTIONAL PROVISIONS AND STATUTES**

Ga. Const. of 1777, art. LXIII ................................................................................. 3

Miss. Const. of 1868, art. XIII ................................................................................. 4

Fla. Stat. § 100.371(4)(a) (2025) .............................................................................. 8

**OTHER AUTHORITIES**

Julian N. Eule, *Judicial Review of Direct Democracy*, 99 YALE L.J. 1503 (1990) ...................... 3

United States Election Assistance Commission, *State-by-State Compendium Election Worker Laws & Statutes* (2023) ............................................................................. 9

## STATEMENT OF THE ISSUES

Whether the district court erred when it held that Florida's citizenship and residency requirements for individuals who collect and deliver ballot initiative petitions were subject to heightened scrutiny and that those requirements did not withstand constitutional scrutiny.

## INTEREST OF AMICI CURIAE

"States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally." *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 191 (1999). However, some states have found their "considerable leeway" considerably lessened by federal courts misusing the Free Speech Clause. Not content with protecting initiative sponsors' right to advocate their reforms—a right that no one disputes the sponsors possess—some courts have creatively fashioned a First Amendment right to ballot access and have begun invalidating state laws that, in their arbitrary estimation, do not make the initiative process easy enough.

*Amici* States submit this amicus brief urging the Court to rule that the Free Speech Clause applies only when state initiative procedures burden protected speech—not when they address conduct like conveying signed petitions to state officials. Because Florida's law regulates conduct, not speech, *Amici* States urge the Court to reverse and vacate the district court's preliminary injunction.

1

## SUMMARY OF THE ARGUMENT

The States—not the federal Constitution—decide whether to permit ballot initiatives, and the States—not the federal courts—choose the procedures by which initiatives qualify for their ballots. But some federal courts have assumed the States' role, striking down neutral ballot initiative regulations based on purported First Amendment violations.

The Supreme Court and some circuit judges have sounded the alarm, cautioning federal courts to correct course and leave the crafting of neutral ballot initiative regulations to the States. Some of these jurists have explained that the text, history, and tradition of the First Amendment demonstrate that only content-based and viewpoint-based regulations of political speech and regulations that seriously interfere with initiative advocacy are subject to heightened scrutiny.

Because Florida's challenged statute is content and viewpoint neutral and does not limit initiative advocacy, this Court should reverse the district court's grant of the preliminary injunction.

## ARGUMENT

### I.   States Have Broad Leeway to Regulate Direct Democracy.

A review of the "text, history, and tradition" of the First Amendment indicates that States have "considerable leeway" in deciding how to best operate and protect their initiative process. *United States v. Rahimi*, 602 U.S. 680, 714 (2024) (Gorsuch, J., concurring) (first quote); *id.* at 691 (majority op.); *Buckley*, 525 U.S. at 191 (second quote).

2

The text of the Constitution does not require States to provide for ballot initiatives *at all*. *Meyer v. Grant*, 486 U.S. 414, 424 (1988). During the Founding era, "[d]irect lawmaking by the people was virtually unknown." *Comm. to Recall Dan Holladay v. Wiley*, 120 F.4th 590, 595 (9th Cir. 2024) (Bumatay, J., dissenting from denial of rehearing *en banc*) (quoting *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 793 (2015)). Indeed, the Founders opposed direct democracy and "labored mightily" to prevent any constitutional right to direct democracy. *Id.* at 596 (quoting Julian N. Eule, *Judicial Review of Direct Democracy*, 99 YALE L.J. 1503, 1523 (1990)). Thus, the Constitution leaves it "up to the people of each State, acting in their sovereign capacity, to decide whether and how to permit legislation by popular action." *John Doe No. 1 v. Reed*, 561 U.S. 186, 212 (2010) (Sotomayor, J., concurring).

When States have created avenues for direct democracy, history shows that they imposed all sorts of regulations on their citizens' ability to exercise it. For example, Georgia was the only State with any sort of initiative process at the Founding, allowing citizens to initiate a constitutional convention. *Comm. to Recall Dan Holladay*, 120 F.4th at 596 (Bumatay, J., dissenting from denial of rehearing *en banc*); Ga. Const. of 1777, art. LXIII. However, Georgia required a significant geographical spread (voters from each county) and a high percentage (simple majority) of supporters to initiate a convention. Ga. Const. of 1777, art. LXIII.

The same can be seen from the 1860s to the turn of the 20th-century, as more States began to authorize modes of direct democracy. *Comm. to Recall Dan Holladay*, 120

3

F.4th at 596–98 (Bumatay, J., dissenting from denial of rehearing *en banc*). The Mississippi constitution allowed its citizens to vote directly on constitutional amendments, but still required a two-thirds vote of each branch of the state legislature—three separate times, on different days—before the proposed amendment was put before the people for a vote. *Id.* (quoting Miss. Const. of 1868, art. XIII); *id.* at 597 (fifteen other states had similar provisions in their constitutions). States further imposed high signature thresholds for an initiative to qualify for the ballot—upwards of 25% of the State's voters in some cases. *Id.* at 598.

Still, despite these occasionally onerous restrictions on the exercise of direct democracy, there is no evidence that any state ballot initiative regulation or procedure was challenged in federal court on First Amendment grounds or otherwise until the end of the 20th century. This history "might cause one to raise an eyebrow at the claim that the original understanding of the Free Speech Clause contained some special solicitude for the success of ballot petitions." *Comm. to Recall Dan Holladay*, 120 F.4th at 596 (Bumatay, J., dissenting from denial of rehearing *en banc*). Generally, the fact of a regulation's "longstanding coexistence" with the First Amendment suggests that no "heightened scrutiny" is required. *Vidal v. Elster*, 602 U.S. 286, 300 (2024).

Unsurprisingly, early challenges to state ballot initiatives were analyzed in accordance with a healthy measure of deference to the State, affording no special solicitude to ballot-initiative regulations beyond ordinary First Amendment limitations. The Sixth Circuit upheld Michigan's signature requirement that only registered voters

4

could sign initiative petitions, explaining that "the state may constitutionally place nondiscriminatory, content-neutral limitations on the plaintiffs' ability to initiate legislation." *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993). The Eighth Circuit upheld a similar ballot-initiative process "[b]ecause the state law regulating the initiative procedure does not restrict political speech and the state's interest in protecting the integrity of its initiative process is paramount." *Hoyle v. Priest*, 265 F.3d 699, 704 (8th Cir. 2001).

This Court's precedent falls right in line with these cases. It affirmed the dismissal of a challenge to Florida's single-subject and ballot title requirements, reasoning that, without a "disparate[] impact" to "a particular viewpoint" or restrictions that are "content-based," the requirement does not violate the First Amendment. *Biddulph v. Mortham*, 89 F.3d 1491, 1500 (11th Cir. 1996), *cert. denied*, 519 U.S. 1151 (1997). It was not enough to trigger heightened scrutiny that the state Supreme Court's power to remove petitions deemed unconstitutional was "burdensome to initiative proposal sponsors." *Id.* at 1497.

Thus, "[a]bsent content-or viewpoint-based restriction of political speech, States should be free to experiment with ballot initiatives . . . as they see fit" since "[t]hese decisions involve fundamental questions of state policy and the finetuning of the democratic process." *Comm. to Recall Dan Holladay*, 120 F.4th at 593 (Bumatay, J., dissenting from denial of rehearing *en banc*). States must be given "considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect

5

to election processes generally." *Buckley*, 525 U.S. at 191; *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 685 (2021) ("A State indisputably has a compelling interest in preserving the integrity of its election process.").

## II. Some Lower Courts Have Encroached on the State's Power to Regulate Direct Democracy.

Over the last twenty years, however, some federal courts have begun inserting themselves into state ballot initiative regulations, usurping the States' sovereign role in administering their own direct democracy processes and "endanger[ing] federalism" in the process. *Comm. to Recall Dan Holladay*, 120 F.4th at 603 (Bumatay, J., dissenting from denial of rehearing *en banc*). This Court should steer clear of these courts' pitfalls.

Two circuits in particular have gone astray—the Ninth and the Sixth. In the Ninth Circuit, any initiative regulation that "significantly inhibit[s] the ability of initiative proponents to place initiatives on the ballot" is subject to strict scrutiny, even if it does not impose content- or viewpoint-based restrictions on political speech. *Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012). In the Sixth Circuit, strict scrutiny is automatically triggered whenever the court views a state-imposed restriction as causing "exclusion or virtual exclusion from the ballot." *Thompson v. DeWine*, 959 F.3d 804, 808 (6th Cir. 2020).

Circuit judges in the Sixth and Ninth Circuits have recently questioned their own history-defying precedent. In the Ninth Circuit, Judge Nelson has called for a course correction, observing that the circuit's approach "contravene[s] core First Amendment principles." *People Not Politicians Or. v. Clarno*, 826 F. App'x 581, 584, 592 (9th Cir. 2020)

6

(Nelson, J., dissenting). Judge Bumatay, joined by three other judges, has also concluded that the circuit's precedent "needs to be revisited because it departs from the text and historical understanding of the First Amendment." *Comm. to Recall Dan Holladay*, 120 F.4th at 591 (Bumatay, J., dissenting from denial of rehearing *en banc*). Judge Bush has questioned the Sixth Circuit's approach, explaining that "the First Amendment has little to say about the power of a state government to structure the exercise of its legislative power and, in particular, to establish and regulate a fundamental aspect of that power." *Brown v. Yost*, 133 F.4th 725, 743 (6th Cir. 2025) (Bush, J., dissenting).

The Supreme Court has also taken note of these circuits' wayward jurisprudence. In 2020, the Ninth Circuit affirmed a district court's preliminary injunction holding that Idaho's refusal to suspend its in-person signature-gathering requirement during the COVID-19 pandemic likely violated the First Amendment because it imposed an "unconstitutional burden" on a group's efforts to get its initiative on the ballot. *Reclaim Idaho v. Little*, 469 F. Supp. 3d 988, 999–1003 (D. Idaho 2020). But the Supreme Court stayed the order. *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (2020). In a concurring opinion, Chief Justice Roberts, along with three other members of the Court, criticized the Ninth and Sixth Circuits for "requir[ing] scrutiny of the interests of [] State[s] whenever a neutral, procedural regulation inhibits a person's ability to place an initiative on the ballot." *Id.* at 2616–17 (Roberts, C.J., concurring in the grant of a stay); *see also Yost v. Brown*, 145 S. Ct. 1957 (2025) (Mem) (three justices voted to grant stay of Sixth Circuit order addressing application of First Amendment to procedural initiative requirements).

7

## III. The Court Should Avoid the Mistakes of Other Federal Courts and Follow the Text, History, and Tradition of the First Amendment.

Rather than commit the same mistakes as the Ninth and Sixth Circuits, this Court should adhere to the text, history, and tradition of the First Amendment. State regulations setting neutral rules for participation in the ballot initiative process should not trigger any form of heightened scrutiny based on the burden they impose on initiative proponents. *Biddulph*, 89 F.3d at 1497.

To be sure, "[i]f a state opts to create a ballot initiative process, the First Amendment limits the extent to which the State can regulate 'advocacy itself' that takes place within the initiative process." *Brown v. Yost*, 122 F.4th 597, 605 (6th Cir. 2024) (Thapar, J., concurring) (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir. 2006)). That's because regulating "advocacy itself" affects core political speech in a way that is not content or viewpoint neutral—it is specifically targeted at speech that is in favor of the initiative. *Comm. to Recall Dan Holladay*, 120 F.4th at 600–01 (Bumatay, J., dissenting from denial of rehearing *en banc*).

However, the Florida statute at issue does not regulate "advocacy" or any other form of speech—those who are not Florida residents or United States citizens are free to speak in favor of a ballot initiative or even distribute an initiative petition and encourage others to sign it. Rather, Florida law merely states that they may not "collect" signed petition sheets and deliver them to a supervisor of elections office. Fla. Stat. § 100.371(4)(b) (2025).

8

The line Florida draws tracks the point in which the signature collection process becomes ministerial rather than expressive. The First Amendment is meant to preserve the people's right to engage in "expressive activity." *Moody v. NetChoice, LLC*, 603 U.S. 707, 728 (2024). Inasmuch as petition circulation is expressive, the expressive component is "not created by the conduct itself but by the speech that accompanies it." *Rumsfeld v. F. for Acad. and Institutional Rts, Inc.*, 547 U.S. 47, 66 (2006). Florida law separates the speech from the conduct—at the point in which a person collects and delivers signature sheets, his activity is no more expressive than that of any poll worker collecting and scanning ballots on election day. And there can be no dispute that a state could impose residency requirements on poll workers. United States Election Assistance Commission, *State-by-State Compendium Election Worker Laws & Statutes* (2023), https://tinyurl.com/xxsz5wnk (outlining that the vast majority of states require election workers to be county or state residents).

The Fifth Circuit has recognized this same distinction. In *Voting for America, Inc. v. Steen*, it held that Texas's law requiring volunteer deputy registrars—who "receive and deliver completed voter registration applications"—to be Texas residents did not implicate the First Amendment. 732 F.3d 382, 385 (5th Cir. 2013). As the court explained, "there is nothing inherently expressive about receiving a person's completed application and being charged with getting that application to the proper place." *Id.* at 392 (cleaned up). Even if the volunteer deputy registrar intended to accompany such conduct with political speech, "non-expressive conduct does not acquire First

9

Amendment protection whenever it is combined with another activity that involves protected speech." *Id.* at 389.

This distinction is also consistent with the Supreme Court's decision in *Meyer v. Grant*, 486 U.S. 414 (1988). There, the Court addressed a law prohibiting "circulation of an initiative," an act that "of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Id.* at 416 n.1, 421. Not so with Florida's law, which does not regulate any discussion at all. The same "number of voices" may speak and the same "size of the audience" can be reached by those voices. *Id.* at 422–23. It is only the conduct of collecting and delivering petitions that has been regulated.

Since the First Amendment has nothing to say about the challenged Florida initiative statute, it falls within the broad leeway that States generally have to structure their initiative process, including by enacting measures to prevent fraud and preserve the "integrity and reliability" of the process. *Buckley*, 525 U.S. at 191. And whether or not the district court's qualms with Florida's evidence of past fraud are valid, Florida's strong interest in preventing future fraud is sufficient to uphold the statute—"a State's political system [need not] sustain some level of damage before the legislature [can] take corrective action." *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986).

## Conclusion

For the foregoing reasons, this Court should reverse the district court's decision and vacate the preliminary injunction.

Dated: October 15, 2025

Respectfully submitted,

RAÚL R. LABRADOR
ATTORNEY GENERAL

/s/ *Alan M. Hurst*
ALAN M. HURST
SOLICITOR GENERAL

MICHAEL A. ZARIAN
DEPUTY SOLICITOR GENERAL

GADER WREN
ASSISTANT SOLICITOR GENERAL

*Counsel for Amici State of Idaho*

11

## ADDITIONAL SIGNATORIES

STEVE MARSHALL
Attorney General
State of Alabama

STEPHEN J. COX
Attorney General
State of Alaska

STEVE MONTENEGRO
Speaker of the Arizona
House of Representatives

WARREN PETERSON
President of the
Arizona Senate

CHRIS CARR
Attorney General
State of Georgia

THEODORE E. ROKITA
Attorney General
State of Indiana

KRIS KOBACH
Attorney General
State of Kansas

LIZ MURRILL
Attorney General
State of Louisiana

CATHERINE L. HANAWAY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW H. WRIGLEY
Attorney General
State of North Dakota

GENTNER DRUMMOND
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

JONATHAN SKRMETTI
Attorney General
State of Tennessee

KEN PAXTON
Attorney General
State of Texas

DEREK BROWN
Attorney General
State of Utah

JOHN B. MCCUSKEY
Attorney General
State of West Virginia

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 2,549 words. This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

Dated: October 15, 2025

/s/ *Alan M. Hurst*
Alan M. Hurst

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

Dated: October 15, 2025

/s/ *Alan M. Hurst*
Alan M. Hurst